STATE OF IOWA v. ELMER PRICE, Appellant.

**Criminal law:** SEDUCTION : EVIDENCE : INSTRUCTION. Where an accused, by false promise, protestations of love, deception or other artifice, persuades a chaste woman to yield her virtue, when but for some or all of these she would not have done so, he is

guilty of the crime of seduction; and an instruction to that effect was proper, even though there was evidence that a conditional promise of marriage was what finally induced her to yield.

Same: EVIDENCE. The question of whether the prosecutrix in this case yielded in consequence of defendant's false promise, protestations of love, deception or other artifice, is held under the evidence to have been for the jury.

Same: EVIDENCE. Where the question of sexual intercourse is reduced to a mere matter of barter and sale, as a promise of future marriage in exchange for present sexual favors, it will not amount to seduction; but where a young girl yielded her virtue to one professing love and affection, had previously made her a promise of marriage and insisted that under the circumstances there was nothing wrong in the indulgence, the fact that she required him to renew his promise that he would marry her if anything happened was not sufficient to preclude his conviction for seduction.

*Appeal from Van Buren District Court.*—HON. FRANCIS M. HUNTER, Judge.

WEDNESDAY, NOVEMBER 20, 1912.

THE defendant was convicted of having committed the crime of seduction. He appeals.—*Affirmed.*

*J. C. Mitchell* and *Walker & McBeth,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

LADD, J.—Prosecutrix testified that the accused had sexual intercourse with her in the evening of December 16, 1910. She was then sixteen years old, and he eighteen or nineteen. She testified that he walked home with her frequently, had accompanied her to dances, and had been in her company on other occasions; that some time previous to the date named he had told her that he loved her

and proposed marriage, which she had accepted; that he'
had hugged and kissed her whenever with her alone; that
he so did and told her that he loved her on the way home
on the night in question, and asked her to "let him do it,"
assured her that it was not wrong, as they were to marry·
anyway, and finally said that he would marry her "if any-
thing happened"; and that she yielded to his embraces
after requiring him to repeat this last statement.    On
cross-examination she stated that but for this last promise
she would not have submitted, and that it was what finally
led her to yield.

I.    Appellant complains of several instructions, in
that they permitted conviction if intercourse were procured
by protestations of love, deception, or other seductive arts,

1. CRIMINAL LAW: for that prosecutrix testified that the con-
seduction: ditional promise of marriage was what finally
evidence:
instruction. induced her to yield, and there was no evi-
dence of other seductive arts.    But she did not say that
this was the only influence operating on her will.    For
all that appears, she may not, and the jury might have
found that she would not, have yielded had all protestations
of love been omitted, or had he not insisted that, as they
were engaged to marry, sexual indulgence would be no
harm.    This last, doubtless, was what the court alluded
to as "other seductive arts," and of which, contrary to
appellant's contention, there was evidence.    The mere fact
that the promise to marry her if anything happened was
the final argument which persuaded prosecutrix to yield
did not eliminate from consideration the other influences
which may have operated to overcome her scruples.    In-
deed, it is scarcely conceivable that a chaste woman could
be induced to step aside from the path of virtue in the
absence of all blandishments of love; and, even though
a false promise may be essential to overcome her inclina-
tions to virtue's side, other influences, such as protesta-
tions of love and artifices, such as assurances that there

would be no harm because of an engagement, may have been quite as potential in accomplishing the seduction. If, then, by his protestations of love or other deception or other artifices, in connection with a conditional agreement to marry, or without this, the accused persuaded the prosecutrix to yield to his embraces, when but for such protestations or deception or other artifices she would not have done so, this was sufficient to sustain a finding of guilt, regardless of whether some of these or the conditional promise was what finally determined the issue. In other words, the previous chastity of an unmarried woman having been ascertained and the fact of intercourse established, the inquiry is as to the means by which this was accomplished; and if the accused, by false promise, protestations of love, deception, or other artifice, persuades such woman to yield, when but for some or all of these she would have known "no bliss but that which virtue gives," he is guilty of the crime of seduction. See *State v. Criswell,* 148 Iowa, 254; *State v. McIntire,* 89 Iowa, 139; *Breiner v. Nugent,* 136 Iowa, 322.

Our conclusion is that, notwithstanding the testimony of prosecutrix that the conditional promise of marriage was what finally induced her to yield to sexual indulgence, the court did not err in submitting to the jury whether seduction was accomplished by protestations of love, deception, or other artifices.

Whether the evidence was sufficient to warrant a finding on these separately necessarily depends somewhat on the age and experience of the parties, their relation to one another, and other circumstances. *State v.* 2. SAME: *Hayes,* 105 Iowa, 82; *Hawn v. Banghart,* evidence. 76 Iowa, 683; *Marshall v. Taylor,* 98 Cal. 55 (32 Pac. 867, 35 Am. St. Rep. 144). Enough of the evidence has been recited to indicate that the issues were for the jury to pass on.

II. Counsel for appellant also criticise the instruc-

tions in authorizing conviction upon a finding that inter-
course was procured on the conditional promise of mar-
**3. SAME:**          riage in event pregnancy followed.     Where
**evidence.**          the matter is one merely of barter, as in
*People v. Smith,* 132 Mich. 58 (92 N. W. 776), there is
reason for saying this does not amount to seduction.     It
is then but a blunt offer of wedlock *in futuro* in exchange
for sexual favors *in presenti.*     *State v. Reeves,* 97 Mo. 668
(10 S. W. 841, 10 Am. St. Rep. 349).

But it ought not to be said that a young girl of six-
teen years, in yielding to one professing to love her, and
in the circumstances described by prosecutrix, on the
strength of such a promise, is necessarily of previous un-
chastity, or submitted as the result of passion, rather than
the false promise of the accused.     *State v. Hughes,* 106
Iowa, 125; *State v. Knutson,* 91 Iowa, 549; *State v.
O'Hare,* 36 Wash. 516 (79 Pac. 39, 68 L. R. A. 107, 104
Am. St. Rep. 970).     We adhere to the rule announced
in the *Hughes* case.

The definition of previous chastity was correct, and
the evidence such as to preclude interference with the
verdict by this court.—*Affirmed.*